**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DIEUMAITRE MESIDOR,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, et al.<br><br>Respondents. | ) | Case No. 1:26-cv-12915-PBS |

**PETITIONER'S MOTION TO ENFORCE HABEAS ORDER AND INCORPORATED MEMORANDUM**

Petitioner Dieumaitre Mesidor requests that this Court enforce its Order, dated August 12, 2026, which allowed Petitioner's petition for a writ of habeas corpus and ordered that Petitioner be provided with a bond hearing within seven business days. He therefore now brings this motion to request that this Court enforce its habeas order and remedy the Government's deprivation of Petitioner's due process rights by ordering his release. In the alternative, Petitioner requests that this Court, pursuant to its equitable powers, release him on alternatives to detention such as GPS or telephonic monitoring, hold its own bond hearing, or grant any other relief that the Court sees fit.

**FACTS AND PROCEDURAL HISTORY**

Petitioner filed a petition for a writ of habeas corpus with this Court on Jume 26, 2026. He alleged that he is detained pursuant to 8 U.S.C. § 1226(a), entitling him to a bond hearing, and that his detention without notice or the opportunity to respond violated his due process rights. ECF Doc. No. 1. He requested, *inter alia*, that the Court issue a writ of habeas corpus ordering Respondents to immediately release Petitioner, or in the alternative, to provide

Petitioner an individualized bond hearing before an Immigration Judge ("IJ") with the burden on the government to demonstrate either danger to the community or flight risk. *Id.*

On August 12, 2026, District Judge Patti B. Saris issued an order concluding that "Petitioner's continued detention without an opportunity for a bond hearing violates the Due Process clause." ECF Doc. No. 24, at 7. The Court ordered a bond hearing within seven business days. *Id.* The Court further ordered Respondents to file a status report within fourteen days, indicating whether Petitioner has received a bond hearing "or has been released in lieu of a bond hearing," and the outcome of any bond hearing. *Id.* at 7-8.

On August 20, 2026, Petitioner had a bond hearing before the Chelmsford Immigration Court. The IJ denied Petitioner's request for bond, because she found that the Department of Homeland Security ("DHS") has established, "by clear and convincing evidence that Mr. Mesidor is a danger to the community." ECF Doc. No. 25-1.[1] In the alternative, the IJ found that he "poses a flight risk." *Id.*

The IJ erroneously relied exclusively on Petitioner's dismissed charges and unsubstantiated law enforcement documents to determine that he is a danger to the community, contrary to binding First Circuit law. Thus, the evidence presented at his bond hearing could not have supported the IJ's decision to deny him bond. *See Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024). In finding that he is a flight risk, the IJ erroneously made baseless assumptions about his eligibility for relief and again relied on unsubstantiated law enforcement documents. *Id.* Therefore, Petitioner was not afforded a constitutionally adequate bond hearing, and this Court should intervene and enforce its order.

---

[1] Respondents provided the IJ's bond decision with a Status Report, which they filed with this Court on August 26, 2026. ECF Doc. No. 25-1.

## JURISDICTION

Although 8 U.S.C. § 1226(e) generally prohibits judicial review of an IJ's discretionary bond determination, it does not prohibit a district court from reviewing a contention that a bond denial was unconstitutional or legally erroneous. *See Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255 at *4 (D. Mass. Apr. 14, 2020) (finding jurisdiction to review whether a petitioner was afforded due process, rather than an IJ's discretionary determination); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 236 (W.D.N.Y. 2019) (finding 8 U.S.C. § 1226(e) did not bar jurisdiction because the court was reviewing "whether [the petitioner] received the due process to which he was entitled," and not a discretionary determination); *Cepeda v. Shanahan*, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (finding jurisdiction over a claim that a bond hearing was constitutionally deficient, including "that the government's evidence could not, as a matter of law, establish clearly and convincingly that [the petitioner] was dangerous").

Here, the District Court has jurisdiction to review this petition, because Petitioner asserts that his bond hearing was constitutionally inadequate. Petitioner does not seek review of the IJ's weighing of the evidence in her discretion.

## ARGUMENT

### A. Legal Standard

Although the District Court does not have "authority to encroach upon an IJ's discretionary weighing of the evidence," the IJ's decision must comport with "due process requirements." *Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025), citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). In *Hernandez-Lara v. Lyons*, the First Circuit Court of Appeals held that a noncitizen's due process rights require that

the government "bear the burden of proving dangerousness or flight risk" in a bond hearing. 10 F.4th 19, 39 (1st Cir. 2021); *see also Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021); *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021). Therefore, a noncitizen is entitled to habeas relief upon a showing that the IJ failed to place the burden of proof on the government to establish either dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 41; *Garcia*, 2025 WL 3466312 at *7; *Mayancela Mayancela v. FCI Berlin*, No. 25-CV-LM-TSM, 2025 WL 3215638 at *5 (D.N.H. Nov. 18, 2025) ("[T]he IJ does not have discretion to fail to apply the burden of proof that due process requires."). Petitioner may demonstrate either that the "language of the immigration judge's opinion" demonstrates that the IJ failed to properly allocate the burden of proof, or that "the evidence itself could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Diaz Ortiz*, 384 F. Supp. 3d at 143, quoting *Hechavarria*, 358 F. Supp. 3d at 240.

Judges in the District of Massachusetts have frequently found that IJs have failed to provide constitutionally adequate bond hearings and have ordered immediate release for this reason. *See, e.g.*, *Miti v. Moniz*, 827 F. Supp. 3d 206 (D. Mass. Mar. 31, 2026) (Murphy, J.) (finding evidence before IJ could not have supported finding of danger by clear and convincing evidence as matter of law, where such evidence included a dismissed charge for domestic assault, an incident report, and a summary of an interview with the complaining witness); *Atariguana-Buele v. Warden*, No. 26-12168-LTS, 2026 WL 1825943 (D. Mass June 25, 2026) (Sorokin, J.) (finding the IJ improperly applied the burden of proof when finding petitioner a danger based on a pending charge, as she failed to consider the state court judge's release conditions and gave "no meaningful consideration to evidence presented by petitioners"); *Martinez Aguilar v. McDonald*, No. 1:25-cv-13638-LTS, ECF Doc. No. 17 (D. Mass June 5, 2026) (Sorokin, J.) (ordering

immediate release upon finding the IJ denied bond based only on the fact that immigration relief had been denied, and failed to comply with the Constitutional requirement that she consider "all relevant evidence submitted"); *Montesinos Olivar v. Wesling*, No. 26-cv-11102-ADB, ECF Doc. No. 14 (D. Mass. May 7, 2026) (Burroughs, J.) (ordering release upon finding the IJ's bond denial to be so arbitrary that it violated the fundamental tenets of due process); *Romero-Nolasco v. McDonald*, No. 25-cv-12492-MJJ, ECF Doc. No. 22, 2026 WL 2318111 (D. Mass. Jan. 14, 2025) (Joun, J.) (ordering immediate release upon finding that the IJ failed to consider factors relevant to flight risk or explain why an arrest and criminal charges supported a finding that he was a flight risk); *Reyes Vargas v. Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453519 (D. Mass. May 22, 2026) (Kelley, J.) (ordering immediate release upon finding that the IJ's reliance on the speculative nature of relief did not support a finding that the petitioner was a flight risk and that the IJ did not appear to consider the other relevant evidence).

**B. The IJ Violated Petitioner's Due Process Rights by Relying on Evidence that Could Not Support Her Findings.**

In this case, the IJ denied Mr. Mesidor bond because she found that he is a danger to the community, and in the alternative, that he is a flight risk. However, the IJ's findings are not supported by the record evidence and run contrary to binding First Circuit case law.

**a. In Finding that Mr. Mesidor Is a Danger to the Community, the IJ Relied Exclusively on Uncorroborated Law Enforcement Documents and Dismissed Criminal Charges.**

The IJ based her determination that Mr. Mesidor is a danger to the community solely on his dismissed charges for assault and battery with a dangerous weapon, intimidating a witness, and two counts of abuse of a protection order, as well information in law enforcement documents related to these charges. These charges all stem from two related incidents. DHS filed the docket sheets, criminal complaints, and statement of facts for these charges, as well as an affidavit from

the alleged victim that appears to have been submitted to the criminal court related to the assault and battery charge, and a copy of the abuse prevention order, which indicates that it was terminated at the plaintiff's request. The documentary submission that DHS filed with the immigration court for the bond hearing is attached hereto as Exhibit 1. However, DHS did not file any independent corroboration of these law enforcement documents, as both the statement of fact and the alleged victim's affidavit are solely based on the allegations of the same alleged victim, who was not available in court for cross-examination. *See* Exhibit 1. Counsel for Petitioner objected to the admission of these law enforcement documents into the record, asserting that they are unreliable as one-sided documents containing hearsay, and pointing out several key inaccuracies and inconsistencies in these documents. However, without explanation, the IJ admitted them to the record.

In finding that Mr. Mesidor is dangerous, the IJ wholly relied on the law enforcement documents and made no indication that she had considered the countervailing evidence provided by Mr. Mesidor or gave any meaningful consideration to the dismissal of these charges. *See* ECF Doc. No. 25-1. In particular, the IJ focused on a statement in the alleged victim's affidavit indicating that Mr. Mesidor "forced her to have sexual intercourse with him twice," an allegation that is not corroborated in any other document, for which Mr. Mesidor was never charged, and that was never confirmed in court, given that *all* charges were dismissed. *See id.* Similarly, the statement of facts that was filed for the assault and battery charges is based entirely on the statements of the alleged victim, contains little detail, and provides no additional observations or corroboration from the police officers present at the scene or others. *See* Exhibit 1. The statement of facts regarding the second case against Mr. Mesidor – the dismissed charges for witness intimidation and violation of an abuse prevention order – similarly merely recites the hearsay

allegations of the alleged victim and indicates that Mr. Mesidor was not present when the officers arrived. *See id.* While the statement confirms that the officer viewed a copy of the abuse prevention order, it does not provide any corroboration for the allegations that Mr. Mesidor violated the order or attempted to intimidate the alleged victim. *See id.*

In *Rosa v. Garland*, the First Circuit held that in discretionary determinations, an IJ may not give "substantial weight" to a law enforcement document, such as a police report, in the absence of "a conviction or corroborating evidence of the allegations contained." *Rosa*, 114 F.4th at 17; *see also Maurice v. Bondi*, 154 F.4th 15, 22 (1st Cir. 2025). A pending criminal charge is not an "independent negative factor" that can be weighed in addition to a police report. *Rosa*, 114 F.4th at 21. The First Circuit has further clarified that an adjudicator's determination that a police report is reliable cannot justify giving "substantial weight" to the report, as "[t]hese considerations are distinct from the additional requirement that a police report, absent a conviction, must be corroborated before the agency may give the report substantial weight" in a discretionary determination. *Maurice*, 154 F.4th at 21-22. Thus, an uncorroborated law enforcement document, in the absence of a conviction, must be accorded minimal weight and cannot serve as the sole negative factor justifying denial in a discretionary analysis like bond, as it was in this case.

Moreover, the law enforcement documents presented in this case contain inconsistencies and inaccuracies, which Mr. Mesidor's counsel presented to the IJ during the bond hearing. *See* Exhibit 1. For example, the police's statement of facts related to the assault and battery charges says that the alleged victim was "struck on the head, left arm, and both thighs," and that Mr. Mesidor "pulled her hair and ripped out her weave." *Id.* at 15. Meanwhile, the alleged victim wrote in her affidavit that Mr. Mesidor hit her on her arm and leg and "shook" her hair, and does

not state that he hit her on the head or that he pulled out her hair. *Id.* at 19. The affidavit also states that another woman called to tell her information about Mr. Mesidor on January 1, but then says the woman called her with the information on January 3, leading up to the alleged assault. *Id.* She also says that she fell and lost consciousness, but then recites statements that Mr. Mesidor made as he ran away, although she was supposedly unconscious. *Id.* The statement of facts regarding the second incident states that Mr. Mesidor was the father of the alleged victim's children, even though they did not have children together at the time. *Id.* at 10. The IJ dismissed out of hand Mr. Mesidor's arguments regarding the inconsistencies and inaccuracies in these documents, stating that the inconsistencies were "minor" and "may be explained by differences in language translation." ECF Doc. No. 25-1, at 4. This representation is inaccurate. For example, the affidavit's omission of the two most significant details in the statement of facts – that he struck her on the head and "ripped out her weave" – is not minor and cannot be explained by translation differences. The First Circuit has recognized that some law enforcement sources fail to contain "reasonable, substantial, and probative evidence." *Diaz Ortiz v. Garland*, 23 F.4th 1, 22 (1st Cir. 2022); *see also Prudencio v. Holder*, 669 F.3d 472 (4th Cir. 2012) (describing the "real evidentiary concerns" posed by relying on documents "such as police reports and warrant applications," as these documents "often contain little more than unsworn witness statements and initial impressions," "are designed only to permit a determination of probable cause," and "do not account for later events, such as witness recantations, amendments, or corrections").

Further, the IJ entirely ignored evidence in the record indicating that the allegations against Mr. Mesidor are untrue. Mr. Mesidor's submission that he filed with the immigration court in support of his release on bond is attached hereto as Exhibit 2. Mr. Mesidor provided a declaration, explaining that the accusations against him are false, were based on a

misunderstanding with the police because the police spoke to his partner in a language other than her native language, and that the charges were dismissed because they were untrue and the alleged victim asked for them to be dismissed. Exhibit 2, at 10. His brother also provided a statement, attesting that the alleged victim told him shortly after Mr. Mesidor's arrest that the allegations were not true and that Mr. Mesidor had never been violent with her in any way. *Id.* at 15. The IJ failed to acknowledge this evidence, which rebuts the allegations in the law enforcement documents, in any way. *See* ECF Doc. No. 25-1.

Because the IJ relied solely on uncorroborated and inconsistent law enforcement documents, the evidence could not, as a matter of law, support the IJ's denial of bond. *See Rosa*, 114 F.4th at 17; *Diaz Ortiz*, 384 F. Supp. 3d at 143. To support the denial of bond based on dangerousness, the government must establish by clear and convincing evidence that noncitizen is a danger to the community. *See Hernandez-Lara*, 10 F.4th at 41. Clear convincing evidence means that the evidence is highly and substantially more likely true than untrue; that is, the trier of fact must have "an abiding conviction that the truth of the factual contention is highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 466 (1984). The rationale for this high burden is that it is more difficult for a noncitizen to prove a negative (i.e., their lack of dangerousness), and the government has easy access to any law enforcement records that would indicate any danger. *Hernandez-Lara*, 10 F.4th at 31. Here, the law enforcement documents alone, without external corroboration and weighed against the dismissal of all charges and two credible statements explaining that the allegations were untrue, cannot suffice to meet the government's heavy burden, as they are not entitled to "substantial weight." *See Rosa*, 114 F.4th at 17.

Given the lack of any corroboration of the alleged victim's statements or additional detail in the police report, as well as the rebuttal evidence presented, this case is also unlike a case in which the First Circuit held that an IJ can rely on a police report in certain circumstances, even after charges were dismissed. *See Lee v. Barr*, 975 F.3d 69, 76 (1st Cir. 2020) (holding that it was not improper for an IJ to rely on the substance of a police report, even after charges were dismissed, because the police report was "detailed," included "the officer's recitation of what he observed," and considering "the absence of any credible rebuttal"); *cf. Ganzhi v. Moniz*, No. 26-cv-11478-PBS, 2026 WL 1194941, at *1 (D. Mass. May 1, 2026) (holding that a police report could be sufficient "to support a finding of dangerousness by clear and convincing evidence," when "there was no evidence rebutting the report" and because the report "was not primarily based on hearsay").

In a similar case in which the noncitizen had a dismissed domestic assault charge, this Court found that an incident report and a summary of the complaining witness's testimony could not support the IJ's finding that the petitioner was a danger to the community by clear and convincing evidence. *Miti*, 827 F. Supp. 3d at 219-20. The Court found that the complaining witness's testimony "suffers from an objective lack of corroboration and consistency," in part because the police observed no injuries, and "the witness was apparently unwilling to cooperate with the prosecution." *Id.* Here, similarly, the police's statement documented no injuries or corroboration of the alleged victim's accusations, the alleged victim's testimony contained inconsistencies, and the charges were entirely dismissed at the request of the alleged victim.

Therefore, the IJ erred by failing to place the burden on the government to demonstrate that Mr. Mesidor is a danger to the community by clear and convincing evidence, rendering the bond hearing constitutionally inadequate.

**b. In Finding that Mr. Mesidor Is a Flight Risk, the IJ Relied on Unsubstantiated Law Enforcement Documents and Reached Conclusions that Were Not Supported by the Record.**

The IJ also alternatively found that Mr. Mesidor was a flight risk, relying on two factors: the purportedly "speculative" nature of his eligibility for relief, and the unsubstantiated allegation that he failed to pull over when the police attempted to stop him in his car. ECF Doc. No. 25-1, at 4-5. However, neither of these bases is supported by the record.

The IJ's assertion that Mr. Mesidor's eligibility for immigration relief is "extremely speculative" because he "may be subject to the firm resettlement bar against asylum" is entirely baseless. ECF Doc. No. 25-1, at 4. DHS filed printouts from the websites of the governments of Chile and the Dominican Republic, listing the general requirements for temporary residence and citizenship in Chile, and for residence in the Dominican Republic. Exhibit 1, at 38-57. However, there is nothing in the record whatsoever that addresses how these legal requirements apply to Mr. Mesidor, much less to suggest that Mr. Mesidor would meet the requirements for any of these immigration statuses, or that he has any connection at all to Chile or the Dominican Republic.[2] The IJ also failed to consider that, even if Mr. Mesidor were subject to the firm resettlement bar to asylum, he would remain eligible for withholding of removal and protection under the Convention Against Torture. Indeed, during the bond hearing, counsel for DHS did not even argue that Mr. Mesidor was subject to the firm resettlement bar or that relief was

---

[2] In asylum cases, the firm resettlement bar requires a complex multi-step assessment. *Matter of D-X- & Y-Z-*, 25 I&N Dec. 664, 665 (BIA 2012); *Matter of A-G-G-*, 25 I&N Dec. 486, 500–03 (BIA 2011). DHS has the initial burden to establish that the noncitizen has an offer of firm resettlement, meaning that he will realistically be permitted to reside indefinitely in that country. *Matter of A-G-G-*, 25 I&N Dec. at 495. The noncitizen then has the opportunity to rebut DHS's evidence, or to show that he qualifies for one of the exceptions to the firm resettlement bar. *Id.* at 503.

speculative, and instead based his arguments only on the incident in which Mr. Mesidor allegedly failed to stop when the police were following his car.

The IJ next reasoned that Mr. Mesidor's "criminal history shows a disregard for the law and active attempts to evade enforcement officials by failing to pull over for law enforcement and leading them in a police chase with multiple officers." ECF Doc. No. 25-1, at 4. The allegation that Mr. Mesidor failed to pull over for law enforcement is based on an incident report, in which a state troper describes following a car that failed to pull over. Exhibit 1, at 28. However, the report does not establish that Mr. Mesidor was driving the vehicle during the pursuit. *See id.* The pursuit ended when the vehicle exited the highway. *Id.* Subsequently, law enforcement discovered that the vehicle belonged to Mr. Mesidor, and the officer located the suspected vehicle in a parking lot. *Id.* The report states that Mr. Mesidor was in the vehicle when the officer located it, but does not indicate that he was in the driver's seat or how much time had elapsed since the pursuit of the car had ended. *Id.* There is nothing in the record that shows that Mr. Mesidor was ever charged with any offense for this incident. Further, even if Mr. Mesidor had been driving the car, the report indicates that when he was apprehended, he stated that he did not understand that he had been pulled over, as he was from Haiti. *Id.* The report also notes that the car was "traveling unusually slow[ly]" and continued to "drive forward without increasing its speed" throughout the pursuit. *Id.* These factors suggest that, even if Mr. Mesidor were driving the car, he never intended to evade the police. Thus, the IJ's conclusion that Mr. Mesidor made "active attempts to evade enforcement officials" is unfounded. ECF Doc. No. 25-1, at 4.

The IJ's reliance on unfounded conclusions, as well as her failure to meaningfully consider the significant countervailing factors in this case, demonstrate that the IJ failed to

properly hold DHS to its burden to establish that Mr. Mesidor is a flight risk by the preponderance of the evidence. *See Hernandez-Lara*, 10 F.4th at 41.

Therefore, Mr. Mesidor was not afforded a constitutionally adequate bond hearing that comports with his due process rights.

**C. The IJ's Exercise of Discretion in Denying Bond was So Arbitrary and Capricious That It Violated Fundamental Tenets of Due Process.**

The IJ's exercise of discretion in the bond decision violated Mr. Mesidor's right to due process because it was so arbitrary and capricious that it would offend the fundamental tenets of due process. *See Diaz Ortiz*, 384 F. Supp. 3d at 144. An agency decision is arbitrary and capricious if it is not "based on the consideration of the relevant factors" or "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983); *Carcieri v. Kempthorne*, 497 F.3d 15, 43 (1st Cir. 2007). Such a decision may be reversed as an abuse of discretion when it is made without rational explanation or inexplicably departs from established policies. *See Diaz-Resendez v. INS*, 960 F.2d 493 (5th Cir. 1992).

The reviewing court is tasked with examining "the reasons for agency decisions – or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). However, "the reviewing court should not attempt itself to make up for [the agency's] deficiencies; the court may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

In this case, the IJ's decision to deny bond was arbitrary and capricious because the IJ placed undue weight on dismissed charges and entirely failed to consider the countervailing evidence. The IJ erred by treating the allegations contained in the police reports as fact and giving them substantial weight, even though Mr. Mesidor has not been convicted and there was

no independent corroboration of the alleged victim's accusations against him in the record. Such reliance was in plain contravention of the First Circuit caselaw, and the IJ provided no reason for diverging from this controlling precedent. *See Rosa*, 114 F.4th at 17; *Maurice*, 154 F.4th at 21-22.

Counsel for Mr. Mesidor objected to the admission of the police reports into the record, asserting that they are unreliable as a one-sided law enforcement documents containing hearsay. However, the IJ admitted them to the record and relied heavily on their contents. The IJ erred by providing no explanation for why she found the police report to be reliable or entitled to any meaningful weight and by dismissing out of hand the inconsistencies and inaccuracies in these documents.

Moreover, as noted, even if the law enforcement documents were properly found to be reliable, such a finding could not justify the IJ's exclusive reliance on them to justify finding Mr. Mesidor to be dangerous. *See Maurice*, 154 F.4th at 21-22 (finding that the BIA erred by "principally rel[ying] on the misconduct" described in two police reports to make a negative discretionary finding, without assessing whether the reports were corroborated, despite a finding the that the reports were reliable). The IJ also failed to weigh these documents against the evidence in the record, including Mr. Mesidor's and his brother's declarations, stating that the accusations against Mr. Mesidor are false and explaining the incidents that led to his arrests.

The IJ's decision was also arbitrary and capricious because it was not "based on the consideration of the relevant factors" to a bond hearing in compliance with the requirements of *Hernandez-Lara*. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43; *Hernandez-Lara*, 10 F.4th at 39-41. In addition to affording undue weight to the law enforcement documents, the IJ failed to consider countervailing factors indicating that Mr. Mesidor is not dangerous or a flight risk.

In finding that Mr. Mesidor is a danger to the community, the IJ entirely ignored this countervailing evidence of Mr. Mesidor's innocence, the fact that the police reports were entirely based on hearsay, as well as numerous letters that Mr. Mesidor provided from friends and family members, describing him as a peaceful and calm man who does not use violence. *See* ECF Doc. No. 25-1; Exhibit 2, at 14-15, 29, 35-48. The IJ also failed to grapple with the fact that the criminal court released Mr. Mesidor after both of his arrests. ECF Doc. No. 25-1; Exhibit 2, at 60, 64.

With regard to flight risk, the IJ only mentioned the positive equities presented in Mr. Mesidor's case in passing, briefly noting that he "has United States citizen children, letters of support, and stable employment." ECF Doc. No. 25-1, at 4. However, the IJ entirely overlooked the majority of the relevant considerations that significantly mitigate any flight risk. *See Hernandez-Lara*, 10 F.4th at 40 (noting that the "most relevant factors" when assessing flight risk include "family and community ties, place of residence, length of time in the United States, and record of employment"). Mr. Mesidor's partner gave birth extremely prematurely to his United States citizen babies in July 2026, and these babies have suffered significant health issues due to their prematurity and required an extended stay in the neonatal intensive care unit. Exhibit 2, at 10, 14, 54. His partner also suffered from serious health complications related to pregnancy and childbirth and recently had to be hospitalized after re-injuring her cesarian section incision. *Id.* at 10, 14, 56. In addition to the couple's newborn babies, she is also a single mother to three- and four-year-old children and has no one to help her care for them. *Id.* at 10, 14. These circumstances, which the IJ overlooked, provide strong incentive for Mr. Mesidor to appear for all proceedings, so that he can remain in the United States and provide essential support and care for his newborn babies and partner. Further, Mr. Mesidor has resided in the United States for

over three years and has a stable home in the United States with his brother and his brother's family. *Id.* at 9, 14, 39. He has diligently pursued his asylum application since approximately three months after arriving in the United States, when he was not even facing removal proceedings, and he entered the United States through a lawful parole process. *Id.* at 10. These significant factors, when weighed against the largely unfounded allegations that Mr. Mesidor's application for relief is speculative and that he attempted to evade the police in his car on one occasion, clearly demonstrate that Mr. Mesidor is not a flight risk. However, the IJ only considered the purportedly negative factors in Mr. Mesidor's case and paid lip service to the existence of some, but not all, of the positive factors.

Given the IJ's failure to consider the extensive evidence presented in Mr. Mesidor's case, the bond hearing failed to comply with the fundamental tenants of due process.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Order Respondents to release Petitioner immediately.

(2) In the alternative, hold its own bond hearing; or

(3) Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/ *Emily Kase*
Emily Kase, Esq.
Committee for Public Counsel Services
6 Pleasant Street, 6th Floor
Malden, MA 02148
Telephone: (781) 652-5695
Email: ekase@publiccounsel.net

Dated: September 2, 2026

**Certificate of Service**

I hereby certify that I caused the foregoing document to be served on Respondents' counsel on this 2nd day of September of 2026 via the CM/ECF platform.

*/s/ Emily Kase*
Emily Kase

**LR 7.1 Certificate**

I hereby certify that I notified Respondents' counsel about the foregoing motion. Respondents through their counsel replied that they opposed Petitioner's motion.

/s/ *Emily Kase*
Emily Kase